IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

EDDIE MCKINNEY                                                                                          PLAINTIFF

V.                                                                              CIVIL ACTION NO. 2:07cv191

BOLIVAR MEDICAL CENTER                                                                           DEFENDANT

## ORDER

This cause comes before the court on the motion of defendant Bolivar Medical Center ("BMC") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Eddie McKinney has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is, *inter alia*, a race discrimination and retaliation action arising out of plaintiff's termination as a speech therapist by BMC, an acute care hospital located in Cleveland, Mississippi. McKinney began working full time for BMC in 1998, up until his work status was changed to "as needed" in October, 2005. Defendant asserts that it changed plaintiff's work status due to the fact that it already employed another speech therapist, Stephanie Hutchinson, whose performance was allegedly superior to plaintiff's and whose services were in greater demand with patients. Plaintiff eventually became aggrieved over the fact that Hutchinson earned considerably more than his $27-30/hour salary, a discrepancy that defendant attributes to Hutchinson's superior work performance and to her having worked two years longer at BMC.

Plaintiff also took issue with new policies instituted by his supervisors Steve Fortenberry and Allen Porter, who took over as Co-Directors of BMC's Rehabilitation Department in July 2005. In particular, plaintiff disagreed with his being forced to move into a smaller office and to

his supervisors' adoption of new documentation policies. For its part, BMC contends that plaintiff failed to comply with reasonable new billing and work documentation policies instituted by his supervisors and that he made unjustified accusations of racism against them. Defendant cited these reasons for terminating plaintiff on September 7, 2006.

On October 10, 2006, McKinney filed a Charge of Discrimination with the EEOC in which he asserted only one claim: an Equal Pay Act claim alleging that Hutchinson received greater pay based on her sex. That is, McKinney's EEOC charge initially asserted in its entirety that:

> In or about August 2006, I learned that I was being paid less wages for performing the same job duties as a female employee. No reason was given. I believe that I have been discriminated against because of my sex (male), in violation of the Equal Pay Act (EPA).

McKinney initially made no claim for race discrimination, although he filed an Amended Charge on February 27, 2007, asserting an additional basis for his same asserted wage disparity – his race. Specifically, McKinney alleged in his amended charge that:

> I, Eddie L. McKinney, Jr., am amending my charge of discrimination filed against Bolivar Medical Center, to include race, Black as a basis. I believe that I am being paid less wages in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race, Black and sex, male.

At no time in his EEOC proceedings did McKinney assert any claim of discrimination related to his termination. The EEOC issued McKinney a Right to Sue Notice, and he filed this lawsuit on October 10, 2007.

Although McKinney asserts a lengthy list of federal and state claims in his complaint, he concedes in his brief that summary judgment is in order with regard to the vast majority of them. Somewhat surprisingly, McKinney has completely given up on the disparate pay claims which

constituted his sole focus before the EEOC. Plaintiff instead relies upon two remaining claims: race discrimination and retaliation claims asserted pursuant to 42 U.S.C. § 1981. By electing to proceed under § 1981, McKinney avoids Title VII's requirement that he first raise discrimination or retaliation claims before the EEOC, and his § 1981 claims are therefore not procedurally barred. Still, the fact that plaintiff has changed the focus of his claims does not lend itself to confidence in them, and he has produced little in the way of evidence to bolster those claims in these proceedings.

In opposing the motion for summary judgment, plaintiff produces essentially no evidence that he was fired based on either retaliation or discrimination, and his entire case boils down to a largely circular argument based on one of the two parts of defendant's stated non-discriminatory reasons for firing him. It should be noted that plaintiff does not appear to contest one of defendant's two stated reasons for firing him, namely poor work performance, including a failure to comply with new documentation and billing procedures initiated by his supervisors. Plaintiff's co-supervisor Fortenberry describes the events leading up to his termination as follows:

> After Allen Porter and I started as co-directors, we instituted new documentation protocols for all therapists at Bolivar, including speech therapists. Among other documents, the therapists were required to fill out "charge sheets," documents used to record billable and non-billable activities to ensure, among other things, accurate, and appropriate billing. Mr. McKinney resisted these changes from the beginning, and I had to repeatedly counsel him to prepare his charge sheets. Even when he turned in his charge sheets, they were often incomplete or inaccurate. . . . On or about September 7, 2006, I counseled Mr. McKinney for recording more billable units than was possible for the time he had spent providing speech therapy for patients. This overbilling constituted a serious offense, and I issued Mr. McKinney a written counseling.

Plaintiff does not attempt to rebut defendant's evidence in this regard, and this court will

3

therefore regard defendant's allegations in this regard as having been admitted.

In opposing summary judgment, plaintiff focuses on the second of two stated non-discriminatory reasons offered by defendant, namely that plaintiff had called his supervisors "racists" without good reason for doing so. Somewhat surprisingly, plaintiff denies that he ever accused his supervisors of racial animus against him, even though he accuses them of such in this lawsuit. More problematically for plaintiff, he seeks to utilize his denial of having called his supervisors racist as the sole disputed fact issue supporting his discrimination and retaliation claims, with no further proof of discrimination or retaliation.[1] With regard to his race discrimination claims, plaintiff argues that his supervisor "clearly exhibited a discriminatory animus toward Mr. McKinney by claiming that Mr. McKinney had referred to him as a racist, and exerted influence over his termination by making this false allegation to the Defendant's human resources department." Plaintiff further argues that BMC "rubber stamped the supervisor's allegation of making a complaint of race discrimination by failing to conduct any investigation prior to making the decision to terminate."

Even giving plaintiff the benefit of the doubt that he did not, in fact, call either of his supervisors racists, the relevant issue for this court's purposes is whether BMC genuinely believed that he had made an unfounded accusation in this regard in electing to fire him. In the court's view, plaintiff has failed to create genuine fact issues in this regard, and he has not even attempted to rebut defendant's evidence that he demonstrated poor work performance. The court would also note a basic inconsistency between plaintiff's disparate pay claims before the EEOC

---

[1] It is unclear to this court which of plaintiff's two supervisors he is alleged to have called racist, but the court views this area of uncertainty as being immaterial.

and his wrongful termination claims before this court. Plaintiff now appears to allege that it was one or both of his supervisors, rather than BMC itself, who acted with racial animus against him. Plaintiff argued before the EEOC, however, that he was discriminated against in his pay, and his pay rate was set by BMC long before Porter and Fortenberry began to supervise him in 2005. Even as to these disparate pay claims, plaintiff appeared to have difficulty deciding before the EEOC whether this disparity was based on his sex and/or race.

The facts and procedural history of this case thus support a conclusion that plaintiff himself has nothing more than vague and continually evolving suspicions regarding who discriminated against him (i.e. his supervisors or BMC itself), on what basis that discrimination existed (i.e. race or sex), and how that discrimination manifested itself (i.e. in disparate pay or wrongful termination). For example, in discussing his now-abandoned disparate pay claims, plaintiff testified as follows:

> Q. Do you believe that [Stephanie Hutchinson] was paid differently because she's a woman and you're a man?
> A. To honestly answer that, I can't really answer that…
> Q. Do you believe that she was paid more than you because she's white and you're not?
> A. That could possibly be the reason, but I'm not really sure if that's the reason.

Plaintiff's Deposition At 26-27. In the court's view, plaintiff has failed to establish genuine fact issues regarding whether he was discriminated against on the basis of his race, and his race discrimination claims are therefore due to be dismissed.

The court now turns to defendant's motion for summary judgment as to plaintiff's retaliation claims. Plaintiff's retaliation claims are unorthodox in that he steadfastly denies that he engaged in any protected activity in this case, testifying as in his deposition as follows:

> Q. You never complained, did you, at any time during your employment that either Mr. Fortenberry or Mr. Porter or anyone at the hospital was treating you differently because of the color of your skin, did you?
> A. I never complained about the color of my skin, I complained about being harassed, being followed around.
> Q. And with respect to your claim of harassment, you never complained that you were being harassed because of the color of your skin either, did you?
> A. Not because of the color of my skin.

Plaintiff's Deposition At 115.

In the court's view, this deposition testimony is fatal to plaintiff's retaliation claims, inasmuch as it clearly demonstrates that he engaged in no protected activity in this case. Conceding as much, plaintiff relies instead upon an argument that defendant incorrectly *believed* that he had engaged in a protected activity in this case. Plaintiff cites only Third Circuit authority indicating that such a belief might be sufficient to maintain a retaliation claim, *see, e.g. Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561 (3rd Cir. 2002), and he cites no binding Fifth Circuit precedent in support of this proposition. Even if this theory were adopted by the Fifth Circuit, the fact remains that plaintiff cites no proof indicating that defendant believed that he had engaged in actual protected activity in this case. Indeed, defendant stated in its termination notice that it fired plaintiff partly for "verbally stating and/or insinuating that his supervisors are racist," but there is no indication in the record that defendant believed that plaintiff had made any such statement in the context of engaging in a protected activity under federal law.

In the court's view, merely making factually unsupported verbal statements that one or more supervisors are racist, standing alone, would not constitute a protected activity. To hold otherwise would essentially permit an employee to inoculate himself against termination simply by making baseless accusations of racism when confronted with accusations of poor work

6

performance. Plaintiff's retaliation claims are without merit, and this lawsuit is due to be dismissed in its entirety.

In light of the foregoing, defendant's motion for summary judgment is granted.

A separate judgment will be issued this date, pursuant to Fed. R. Civ. P. 58.

So ordered, this the 15th day of January, 2009.

                        **/s/ MICHAEL P. MILLS**
                        **CHIEF JUDGE**
                        **UNITED STATES DISTRICT COURT**
                        **NORTHERN DISTRICT OF MISSISSIPPI**